GUTIERREZ v DAIRYLAND INSURANCE COMPANY

Docket No. 50996. Submitted December 4, 1980, at Grand Rapids.—
Decided October 6, 1981. Leave to appeal applied for.

Plaintiff, Doroteo Gutierrez, a service station attendant, was
standing behind a Ford automobile pumping gasoline into the
Ford when a Dodge automobile entered the station, struck the
plaintiff and pinned him between the two automobiles. The
plaintiff was not a named insured on any motor vehicle insur-
ance policy. The Ford was insured by State Auto Mutual
Insurance Company, and the Dodge was allegedly insured by
Dairyland Insurance Company although the existence of Dairy-
land's policy was in dispute. Plaintiff attempted to recover no-
fault benefits from Dairyland, which denied coverage on the
basis that its policy had expired. Plaintiff then filed a claim
with the Assigned Claims Facility, which assigned the claim to
Farm Bureau Mutual Insurance Company. Farm Bureau de-
nied the claim, asserting that coverage was available from
either Dairyland or State Auto Mutual. Plaintiff then brought
an action against Dairyland, the Assigned Claims Facility, and
Farm Bureau, seeking recovery of benefits from one of the two
insurers. The Ottawa Circuit Court, Calvin L. Bosman, J.,
granted summary judgment in favor of Dairyland on the basis
that Dairyland did not insure the Dodge on the date of the
accident, and granted summary judgment in favor of Farm
Bureau and the Assigned Claims Facility on the basis that a
person pumping gasoline into a car falls under an exception to

REFERENCES FOR POINTS IN HEADNOTES ·

[1] 7 Am Jur 2d, Automobile Insurance §§ 36, 38.
Cancellation of compulsory or "financial responsibility" automobile
insurance. 34 ALR2d 1297.

[2-4] 7 Am Jur 2d, Automobile Insurance §§ 127, 129.
Meaning of "operate" or "being operated" within clause of automo-
bile liability policy limiting its coverage. 51 ALR2d 924.

[3] 7 Am Jur 2d, Automobile Insurance § 354.
What are accidents or injuries "arising out of ownership, mainte-
nance, or use" of insured vehicle. 89 ALR2d 150.

[4] 7 Am Jur 2d, Automobile Insurance §§ 135, 340, 351.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

the "parked vehicle" exclusion of the no-fault act and that, therefore, State Auto Mutual, the insurer of the Ford, provided coverage applicable to plaintiff's injuries. Plaintiff appeals, alleging that Dairyland still insured the Dodge at the time of the accident and that summary judgment in favor of Farm Bureau and the Assigned Claims Facility was improper. *Held:*

1. The Dairyland policy on the Dodge had expired more than one year before the accident. Summary judgment in favor of Dairyland was proper.

2. Plaintiff qualifies for personal protection benefits because his injuries arose out of the operation and use of a motor vehicle (the Dodge) as a motor vehicle.

3. Plaintiff's injuries were not foreseeably identifiable with the act of pumping gasoline into the "parked" Ford, therefore the injuries did not "arise out of" his maintenance of the Ford and he is not disqualified from receiving benefits by the parked vehicle exclusion.

4. A person in plaintiff's position is to claim no-fault benefits first from insurers of owners or registrants of vehicles involved in the accident. In this case both the Ford and the Dodge were "involved" in the accident, and the only insurer of an involved vehicle is State Auto Mutual, the insurer of the Ford. Because the Ford was covered by an insurance policy with State Auto, the summary judgment in favor of Farm Bureau and the Assigned Claims Facility was not improper.

Affirmed.

1. INSURANCE — AUTOMOBILES — NOTICE OF CANCELLATION — STAT-UTES.

An automobile insurer is not required to give notice of cancellation of an insurance policy where the policy expires by its own terms (MCL 500.3208; MSA 24.13208).

2. INSURANCE — AUTOMOBILES — OPERATION AND USE OF MOTOR VEHICLE — STATUTES.

A plaintiff's injuries arose out of the operation and use of a motor vehicle as a motor vehicle, as a matter of law, where the plaintiff, a service station attendant engaged in fueling an automobile, was struck by another automobile (MCL 500.3105; MSA 24.13105).

3. INSURANCE — AUTOMOBILES — PARKED VEHICLES — STATUTES.

The exclusion from eligibility for personal injury protection benefits where the vehicle involved is parked does not apply unless there is a causal connection between the injuries and the

ownership, maintenance or use of the parked vehicle (MCL 500.3106; MSA 24.13106).

4. INSURANCE — AUTOMOBILES — FORESEEABLY IDENTIFIABLE INJURY.
  A sufficient causal connection between a plaintiff's injuries and the ownership, maintenance or use of a motor vehicle is established, for purposes of the no-fault insurance act, if the injury is foreseeably identifiable with the normal maintenance of a motor vehicle.

*McCroskey, Libner, Van Leuven, Feldman, Cochrane & Brock, P.C.,* for plaintiff.

*Rhoades, McKee & Boer* (by *Michael J. Roberts*), for Dairyland Insurance Company.

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon*), for Farm Bureau Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Warren R. Snyder,* Assistants Attorney General, for the Assigned Claims Facility.

Before: R. B. BURNS, P.J., and R. M. MAHER and J. T. KALLMAN,* JJ.

R. M. MAHER, J. Plaintiff appeals by right the orders of the trial court granting summary judgment in favor of all defendants pursuant to GCR 1963, 117.2(3).

On the afternoon of March 26, 1977, plaintiff Doroteo Gutierrez was performing his duties as a service station attendant at a Clark Service Station in Holland, Michigan. At approximately 3:50 p.m. he was standing behind a stationary 1970 Ford Falcon pumping gasoline into its fuel tank when a 1969 Dodge coasted into the station and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

struck plaintiff, pinning him between the Dodge and the Falcon. As a result of this accident Mr. Gutierrez was seriously injured.

At the time of the accident plaintiff was not a named insured on any motor vehicle insurance policy.[1] The Ford was owned by Shirley Montgomery, operated by her daughter, Cynthia Rossiter, and insured by State Auto Mutual Insurance Company. The Dodge was owned by a young man named Anthony Smith and operated by a young woman named Carolina Castro.[2] It was allegedly insured by defendant Dairyland Insurance Company, but since this is a matter in dispute it will be necessary to set out some additional facts.

On February 21, 1976, Anthony Smith purchased the 1969 Dodge from a used car dealer in Detroit. At the time, Smith was 18 years old and was purchasing his first car. Although his family lived in Detroit, Smith was a student at the Grand Valley State Colleges and resided at the Campus View Apartments in Allendale, Michigan. On the subject of insurance, the car dealer referred Smith across the street to the Michigan Standard Insurance Agency where he spoke with Mr. Vincenzo Commisso, an agent for the Dairyland Insurance Company. Smith paid $60, good for two months' premiums on a policy with Dairyland, and was issued a certificate of no-fault insurance. Smith indicated that the policy and premium notices were to be sent to his mother's address in Detroit. The only address listed on the insurance application, however, was "4110 Campus View Apts". No

---

[1] See *Underhill v Safeco Ins Co,* 407 Mich 175; 284 NW2d 463 (1979), *Esquivel v American Fidelity Fire Ins Co,* 90 Mich App 56; 282 NW2d 240 (1979).

[2] After the unfortunate events of March 26, 1977, Anthony Smith and Carolina Castro were married. She is now known as Carolina Castro Smith.

policy or premium notices were ever received by either Smith or his mother, and despite several attempts neither was able to contact Mr. Commisso. The record does reflect that Dairyland sent a renewal notice to "4110 Campus View Apartments, Detroit, Michigan" on April 5, 1976, but the notice was not, of course, received and no additional premium was ever paid. Accordingly, Dairyland considered the policy automatically expired on April 21, 1976. The accident took place one year, one month, and five days after the issuance of the policy.

Plaintiff sought to recover no-fault benefits from Dairyland. Dairyland denied coverage on the basis that the policy had expired. Plaintiff then filed a claim with the Assigned Claims Facility of the State of Michigan. The claim was assigned to defendant Farm Bureau Mutual Insurance Company. Farm Bureau also denied the claim, contending that personal protection insurance benefits applicable to plaintiff's injuries were available either from Dairyland or from State Auto, the insurer of the Ford. Plaintiff then brought suit seeking the payment of benefits either from Dairyland or Farm Bureau. All defendants moved for summary judgment. The trial court initially granted summary judgment in favor of Dairyland, holding that Dairyland did not insure the Dodge on the date of the accident, but denied the motions of the remaining two defendants, holding that since the Ford was "parked" the Ford's insurer was not liable under § 3106 of the no-fault act, MCL 500.3106; MSA 24.13106.

Farm Bureau then moved for reconsideration, drawing the trial court's attention to the decision of this Court in *Heard v State Farm Mutual Automobile Ins Co*, 93 Mich App 50; 286 NW2d 46

(1979), *lv gtd* 408 Mich 896 (1980). The *Heard* Court held that when a person is pumping gasoline into a car the second exception to the § 3106 exclusion applies, MCL 500.3106(b); MSA 24.13106(b). Although the trial court in the instant case disagreed with this aspect of *Heard,* it felt bound by the decision and, on reconsideration, granted summary judgment in favor of Farm Bureau and the Assigned Claims Facility, holding that insurance applicable to plaintiff's injuries was available from State Auto, the insurer of the Ford. See MCL 500.3172; MSA 24.13172.

On appeal, plaintiff presents two issues for our consideration. The first presents few problems. Plaintiff insists that at the time of the accident Dairyland still insured Smith's Dodge. He argues that Smith's policy was never effectively cancelled since a notice of cancellation was never received. The problem with plaintiff's argument is that Dairyland never attempted to cancel the policy, Instead, it expired by its own terms. The accident occurred one year, one month, and five days after the policy was issued. The policy was actually good for only two months. At his deposition, Smith testified that when he purchased the insurance he was aware that at the most it was good for only six months. In addition, even if the policy specified no term it could be considered expired instead of "cancelled" after one year. MCL 500.3208; MSA 24.13208. Because the policy expired, there was no requirement to give notice of cancellation. MCL 500.3208; MSA 24.13208. Because it was impossible for plaintiff's claim against Dairyland to be supported at trial, the trial court did not err in granting summary judgment in favor of Dairyland pursuant to GCR 1963, 117.2(3). *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973).

The second issue, concerning whether the trial court properly granted summary judgment in favor of defendants Farm Bureau and the Assigned Claims Facility, is more problematic. As argued in the trial court and on appeal, the issue is whether plaintiff should recover from the Ford's insurer, State Auto, or from the assigned claims insurer, Farm Bureau. Since the assigned claims insurer is only liable if there is no other personal protection insurance applicable to the injury, no other applicable insurance can be identified, or such other insurance is not available in a sufficient amount, MCL 500.3172; MSA 24.13172, Farm Bureau is not liable on plaintiff's claim if the insurance provided by State Auto is applicable[3] to his injuries. Thus, as more precisely defined, the issue is whether State Auto's insurance on the Ford is applicable to plaintiff's injuries in the instant case.

The parties and the trial court addressed this issue in terms of the parked vehicle exclusion found in § 3106 of the no-fault act:

"Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle unless any of the following occur:

"(1) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"(b) The injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) The injury was sustained by a person while occupying, entering into or alighting from the vehicle." MCL 500.3106; MSA 24.13106.

[3] The only issue at the present time is whether insurance from State Auto is applicable. If applicable, it is clearly identified and any claim that it is insufficient would, of course, be premature.

For the purpose of summary judgment the parties stipulated to the fact that the Ford was "parked" at the time of the accident. The parties and the trial court apparently proceeded on the basis that if the Ford was parked benefits could not be recovered from State Auto unless one of the. exceptions to the parked vehicle exclusion applied. Argument centered around the applicability of the exception found in § 3106(b). As previously noted, the trial court originally held that exception inapplicable, but reversed itself after reconsideration in light of *Heard v State Farm Mutual Ins Co, supra.* Based on *Heard,* the trial court held that under § 3106(b) an exception to the parked vehicle exclusion applied to the instant case. Accordingly, the trial court found that insurance from State Auto applied to the instant case.

Although we ultimately reach the same result as the trial court and affirm, we do so for different reasons. Our disagreement with the rationale of the trial court's holding (and, for that matter, with this Court's analysis in *Heard),* centers on our belief that the parked vehicle exclusion is inapplicable in the instant case.

In order to establish that he is entitled to personal protection insurance benefits plaintiff must establish that he suffered accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. MCL 500.3105; MSA 24.13105, *Dowdy v Motorland Ins Co,* 97 Mich App 242, 250-251; 293 NW2d 782 (1980), *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 314-315; 282 NW2d 301 (1979), *lv den* 407 Mich 895 (1979). On the basis of the stipulated facts presented to the trial court, we hold that as a matter of law plaintiff's injuries arose out of the operation and use of a motor

vehicle (Smith's 1969 Dodge) as a motor vehicle. Plaintiff's injuries were directly caused by his being struck by the Dodge, pinning him between the Dodge and the Ford. The relationship between the operation and use of the Dodge and plaintiff's injuries was more than incidental or fortuitous. Furthermore, plaintiff's injuries were foreseeably identifiable with the normal operation and use of a motor vehicle as a motor vehicle. It is unfortunate but true that the normal operation and use of motor vehicles all too often results in the striking and injuring of pedestrians.

The next question is whether the fact that a "parked" vehicle was also involved in the accident (Montgomery's 1970 Ford) disqualifies plaintiff from recovering benefits due to the parked vehicle exclusion. In this regard we first note that the fact that a "parked" vehicle is involved in the accident is not alone sufficient to justify the exclusion of coverage and trigger an examination as to whether any of the three exceptions apply. Once it is determined that the vehicle in question was parked (as was stipulated in the instant case), the next question is whether the injuries *arose out of* the ownership, operation, maintenance, or use of the parked vehicle as a motor vehicle. *Kudek v Detroit Automobile Inter-Ins Exchange,* 100 Mich App 635, 638; 300 NW2d 350 (1980). In other words, before the exclusion can operate to deny benefits to the injured person there must be a causal connection between the injuries and the ownership, operation, maintenance, or use of the parked vehicle.

Because it appears that by refueling the Ford plaintiff was engaged in the maintenance of a motor vehicle, and because it was stipulated that the Ford was parked, the first step in the proper

analysis of the instant case is whether the plaintiff's injuries *arose out of* the maintenance of a parked vehicle as a motor vehicle. Cases dealing with this issue in other contexts have set out what is necessary for the showing of a sufficient causal connection. The term "arise out of" does not require as strict a showing of causation as does the concept of proximate cause. *Williams v Citizens Mutual Ins Co,* 94 Mich App 762, 764; 290 NW2d 76 (1980), *Shinabarger, supra,* 313-314, *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), *lv den* 395 Mich 787 (1975). The relationship between the maintenance and the injury must, however, be more than incidental, fortuitous, or but for. *Ricciuti v Detroit Automobile Inter-Ins Exchange,* 101 Mich App 683; 300 NW2d 681 (1980), *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213, 222; 290 NW2d 414 (1980), *lv den* 409 Mich 919 (1980), *Kangas, supra,* 17. It is not sufficient that the motor vehicle is merely the site of the accident. *Shinabarger, supra,* 314. A sufficient causal connection is established, however, if the injury is foreseeably identifiable with the normal maintenance of a motor vehicle. *Higginbotham, supra,* 222, *Williams, supra,* 765, *Kangas, supra,* 17.

In the instant case a sufficient causal connection was not established between plaintiff's maintenance of the Ford and his injuries. Plaintiff's injuries were not foreseeably identifiable with the act of pumping gasoline into an automobile. The relationship between this act and the injuries sustained was merely incidental and fortuitous. Accordingly, plaintiff's injuries did not arise out of his maintenance of the Ford and he was not disqualified from receiving no-fault benefits by § 3106. Because plaintiff's injuries did not arise out

of his maintenance of a parked vehicle, it is unnecessary to determine whether any of the three exceptions to the exclusion apply.

As the above analysis reveals, the parked vehicle exclusion of § 3106 will seldom apply to cases where there is an accident involving both a parked and an unparked vehicle. This is so because in cases such as the instant case the accident would most often not have occurred except for the intervention of the moving vehicle. Under such circumstances the relationship between the parked vehicle and the injuries will quite often be incidental or fortuitous and the direct cause of the injury will be the moving vehicle. While we do not suggest that it would never be possible to conclude that injuries arose out of the ownership, operation, etc., of a parked vehicle in an accident involving both a parked and unparked vehicle, it does appear that the parked vehicle exclusion will most often be applicable to situations where only a parked vehicle is involved. See *Kudek v Detroit Automobile Inter-Ins Exchange, supra, Miller v Auto-Owners Ins Co,* 92 Mich App 263; 284 NW2d 525 (1979), *lv gtd* 408 Mich 897 (1980).

We also disagree with the parties' conclusions regarding the effect of the parked vehicle exclusion if it is found to be applicable. From the arguments presented it appears that the parties assume that the parked vehicle exclusion would only prevent plaintiff from recovering from State Auto. Plaintiff's argument against Farm Bureau is based on the position that since no insurance is available from State Auto because of the parked vehicle exclusion he is entitled to recover from the assigned insurer. The exclusion is, however, much broader than this. If a causal connection is established, and if none of the exceptions apply, the

injured party has not, as a matter of law, suffered "accidental bodily injury" and cannot recover personal protection insurance benefits for such bodily injury from any no-fault insurer. Furthermore, if the exclusion were applicable, § 3173, MCL 500.3173; MSA 24.13173, would specifically disqualify plaintiff from recoverying benefits from Farm Bureau.[4]

Although we have now determined that plaintiff has suffered injuries for which personal protection insurance benefits are payable under § 3105, we must turn to other sections of the no-fault act to determine which insurer is liable to pay those benefits. *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231, 242-243; 293 NW2d 594 (1980). Section 3115(1), MCL 500.3115(1); MSA 24.13115(1) establishes the priority in which a person such as the plaintiff who suffers accidental bodily injury while not occupying a motor vehicle must claim personal protection insurance benefits. That section provides in part:

"Except as provided in subsection (1) of section 3114 [which is not applicable to the instant case], a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

"(a) Insurers of owners or registrants of motor vehicles involved in the accident.

"(b) Insurers of operators of motor vehicles involved in the accident."

In the instant case, both the Ford and the Dodge

---

[4] "A person who because of a limitation or exclusion in sections 3105 to 3116 is disqualified from receiving personal protection insurance benefits under a policy otherwise applying to his accidental bodily injury is also disqualified from receiving benefits under the assigned claims plan." MCL 500.3173; MSA 24.13173.

were "involved" in the accident. This is so even though the plaintiff's injuries did not arise out of his maintenance of the Ford. The term "involved" is much broader than the phrase "arise out of" and a motor vehicle can clearly be involved in an accident even though it could not be said that a person's injuries arose out of the ownership, operation, etc., of that vehicle. *Heard v State Farm Mutual Automobile Ins Co, supra,* 55-57. Since both vehicles were involved, plaintiff was required to look first to the insurers of the owners or registrants of the vehicles. In the instant case the only such insurer is State Auto. Farm Bureau was not the insurer of Smith, and in any event is not liable where insurance from State Auto is applicable. MCL 500.3172; MSA 24.13172. Because the law, as applied to the stipulated facts, rendered it impossible for plaintiff to support his claim against Farm Bureau and the Assigned Claims Facility at trial, the trial court did not err in granting these defendants summary judgment under GCR 1963, 117.2(3). *Rizzo v Kretschmer, supra.*

The trial court reached the correct result, even if for the wrong reasons. We will not reverse in such circumstances. *Buckeye Union Fire Ins Co v Detroit Edison Co,* 38 Mich App 325, 332; 196 NW2d 316 (1972).

Affirmed.